LOURIE, Circuit Judge.
 

 Wright Medical Technology, Inc. and Dow Corning Corp. (collectively “Wright”) appeal from the summary judgment of the United States District Court for the District of Massachusetts that Osteonics Corp. does not infringe U.S. Patent 4,474,177, either literally or under the doctrine of equivalents.
 
 See Dow Corning Wright Corp. v. Osteonics Corp.,
 
 939 F.Supp 65 (D.Mass.1996). Because the district court did not err in construing two of the limitations of the claims at issue (although'it did err in construing a third limitation), we affirm its judgment that Osteonics does not literally infringe the patent. However, the district court erred in concluding that Wright had waived its claim for infringement under the doctrine of equivalents and in failing to provide a legally sufficient analysis to support the grant of summary judgment on that issue. Accordingly, we affirm-in-part, reverse-in-part, and remand for consideration of infringement under the doctrine of equivalents.
 

 BACKGROUND
 

 The ’177 patent, which is assigned to Wright Medical Technology, Inc., is directed to methods and instruments for reshaping the distal surface of a human femur (thigh bone) so that an artificial knee may properly be attached to it. To function properly, the artificial knee must be aligned with respect to the central long axis of the femur, which is offset from the vertical axis of the body by the so-called varus/valgus angle. According to the invention, proper alignment of the artificial knee is achieved, at least in part, by inserting a rod into the femur’s intramedullary canal and then obtaining an appropriately reshaped distal surface by using a variety of cutting and shaping instruments.
 

 These instruments are designed to fit onto the intramedullary rod’s external guide handle, which is a modified cylinder with two parallel, flattened sides and two intact,
 
 *1442
 
 rounded sides. All but one of the instruments described in the patent may be locked in place on the guide handle by means of a locking bolt which prevents rotation about the guide handle. The remaining instrument, the so-called “plateau planer,” is designed not to be locked in place, but rather to be freely rotated “... about the central long axis of the guide handle and thus rotated about the central long axis of the femur.” 177 patent, col. 6, Ins. 22-25.
 

 In 1991, Wright
 
 [1]
 
 sued Osteonics for patent infringement, alleging that Osteonics’ STAT-IM artificial knee surgery device infringed claims 6-8 and 10. Independent claim 6, from which the other asserted claims depend, reads in pertinent part (with emphasis on the disputed claim terms):
 

 As an article of manufacture, a distal femoral surface shaping guide comprising the combination of
 

 (A) an intramedullary alignment guide comprising (1) an intramedullary rod portion adapted to
 
 closely fit in and extend through the narrowest portion of the human femur
 
 such that the central long axis of said femur passes through the central long axis of said intramedullary rod portion, (2) a guide handle attached to and set at a preselected angle with respect to said axis of the intramedullary rod portion and being adapted to receive at least one femoral surface modifying instrument
 
 in proper alignment with respect to said handle
 
 and (3) a means for securing the combination of (1) and (2) in a fixed position in the femur with
 

 (B) at least one femoral surface modifying instrument which is adapted to cooperatively engage such handle and to assume an appropriate fixed relationship with respect to the distal femoral surface and to the central long axis of the femur____
 

 In 1993, the district court conducted a trial limited to the issue of infringement. Although the parties did not dispute how the STAT-IM device worked, they did contest the proper construction of the claims and, in particular, the terms “closely fit in,” “extend through,” and “in proper alignment.” The jury returned general verdicts stating that each of the asserted claims was not infringed literally or under the doctrine of equivalents. Wright appealed from the denial of its motion for a new trial. Relying on the recently-decided
 
 Markman v. Westview Instruments, Inc.,
 
 52 F.3d 967, 983-84, 34 USPQ2d 1321, 1333 (Fed.Cir.1995) (in banc),
 
 aff'd,
 
 — U.S. -, 116 S.Ct. 1384, 134 L.Ed.2d 577, 38 USPQ2d 1461 (1996), we held in a non-precedential opinion that the district court abused its discretion in denying the motion for a new trial because it did not construe the claims as a matter of law before submitting the issues of infringement to the jury.
 
 See Dow Corning Wright Corp. v. Osteonics Corp.,
 
 57 F.3d 1082 (table, text at 1995 WL 250991) (Fed. Cir. Apr. 28, 1995). We therefore vacated the jury verdict and remanded for a new trial.
 

 On remand, the district court adopted all of Osteonics’ claim construction arguments and granted Osteonics’ motion for summary judgment of no literal infringement. The court also granted Osteonics’ motion for summary judgment on Wright’s claim for infringement under the doctrine of equivalents, holding that
 

 [t]he doctrine of equivalents ... is not relevant to this ease. [Wright] admitted to the Federal Circuit that if Osteonics’ claim interpretation were correct, there would be no infringement at all, whether literal or pursuant to the doctrine of equivalents, a fact noted by the Federal Circuit in its remand to this Court. Even without the concession, however, that seems to be an appropriate assessment of the situation at hand. “The doctrine of equivalents is not a license to ignore or ‘erase structural and functional limitations of the claim’ limitations ‘on which the public is entitled to rely in avoiding infringement.’ ” If Osteonics is
 
 *1443
 
 correct in its claim construction arguments, there is nothing in its system that is the functional equivalent of those claims.
 

 No. 91-10962-GAO, slip op. at 9-10 (citations omitted). This appeal followed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1) (1994).
 

 DISCUSSION
 

 We review a district court’s grant of summary judgment
 
 de novo. Conroy v. Reebok Int’l, Ltd.,
 
 14 F.3d 1570, 1575, 29 USPQ2d 1373, 1377 (Fed.Cir.1994). Summary judgment is appropriate when- there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c);
 
 Johnston v. IVAC Corp.,
 
 885 F.2d 1574, 1576-77, 12 USPQ2d 1382, 1383 (Fed.Cir.1989). Thus, summary judgment may be granted when no “reasonable jury could return a verdict for the nonmoving party.”
 
 Anderson v. Liberty Lobby, Inc.,
 
 477 U.S. 242, 248, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). In deciding whether summary judgment was appropriate, we view the evidence in a light most favorable to the party opposing the motion with doubts resolved in favor of the opponent, which in this ease is Wright.
 
 See Transmatic, Inc. v. Guiton Indus., Inc.,
 
 53 F.3d 1270, 1274, 35 USPQ2d 1035, 1038 (Fed. Cir.1995).
 

 Regarding literal infringement, Wright first argues that because the phrase “adapted to closely fit in and extend through the narrowest portion of the human femur” is modified by the phrase “such that the central long axis of said femur passes through the central long axis of said intramedullary rod portion,” the “closely fit” and “extend through” limitations are met by any intramedullary rod that meets the functional objective of the invention.
 
 See Laitram Corp. v. Cambridge Wire Cloth Co.,
 
 863 F.2d 855, 858, 9 USPQ2d 1289, 1292 (Fed.Cir.1988) (describing a phrase beginning with the term “so that” as a “definitional parameter”);
 
 Bausch & Lomb, Inc. v. Barnes-Hind/Hydrocurve, Inc.,
 
 796 F.2d 443, 450, 230 USPQ 416, 421 (Fed.Cir.1986) (“We hold that smooth means smooth enough to serve the inventor’s purpose.”). Thus, Wright argues that an infringing rod, provided it is sufficiently co-linear with the central long axis of the femur, need only “engage”
 
 (ie.,
 
 enter into) the isthmus of the femur. Osteonics responds that the terms “closely fit*’ and “extend through” mean exactly what they say: an infringing rod must fit tightly into and extend all the way through the isthmus of the femur. We agree with Osteonics regarding the construction of these claim terms.
 

 A determination of infringement requires a two-step analysis. The first step, claim construction, is a question of law which we review
 
 de novo. See Markman v. West-view Instruments, Inc.,
 
 52 F.3d 967, 979, 983-84, 34 USPQ2d 1321, 1329, 1333 (Fed. Cir.1995) (in banc),
 
 aff'd,
 
 — U.S.-, 116 S.Ct. 1384, 134 L.Ed.2d 577, 38 USPQ2d 1461 (1996). The proper construction of the claims is based upon the claim language, the written description portion of the specification including any relevant drawings, the prosecution history, and if necessary to aid the court’s understanding of the patent, extrinsic evidence.
 
 See id.
 
 at 979-81, 52 F.3d 967, 34 USPQ2d at 1329-31. Claim terms are given their ordinary and customary meaning in the field of the invention, unless a special definition is clearly stated in the specification.
 
 See id.
 
 at 980, 52 F.3d 967, 34 USPQ2d at 1330. Thus, “[u]sually, [the specification] is dispositive; it is the single best guide to the meaning of a disputed claim term.”
 
 Vitronics Corp. v. Conceptronic, Inc.,
 
 90 F.3d 1576, 1582, 39 USPQ2d 1573, 1577 (Fed.Cir.1996).
 

 The second step in an infringement analysis is determining whether a particular device infringes a properly construed claim, which is a question of fact.
 
 See Fromson v. Advance Offset Plate, Inc.,
 
 720 F.2d 1565, 1569, 219 USPQ 1137, 1140 (Fed.Cir.1983). “Literal infringement exists if each of the limitations of the asserted claim(s) read[s] on, that is, [is] found in, the accused device.”
 
 *1444
 

 Baxter Healthcare Corp. v. Spectramed, Inc.,
 
 49 F.3d 1575, 1583, 34 USPQ2d 1120, 1126 (Fed.Cir.),
 
 cert. denied,
 
 — U.S. --, 116 S.Ct. 272, 133 L.Ed.2d 194 (1995). Infringement may be found under the doctrine of equivalents when, absent estoppel, every limitation of the asserted claim, or its equivalent, is found in the accused subject matter, the latter differs from what is literally claimed only insubstantially, and it performs substantially the same function in substantially the same way to achieve substantially the same result.
 
 See Warner-Jenkinson Co. v. Hilton Davis Chem. Co.,
 
 — U.S. -, -, 117 S.Ct. 1040, 1054, 137 L.Ed.2d 146, 41 USPQ2d 1865, 1875 (1997);
 
 Graver Tank & Mfg. Co. v. Linde Air Prods. Co.,
 
 339 U.S. 605, 608-09, 70 S.Ct. 854, 856-57, 94 L.Ed. 1097, 85 USPQ 328, 330-31 (1950).
 

 The district court did not err in construing the “closely fit” and “extend through” limitations. Because these terms are not given any special definition in the specification, we must give them their ordinary meaning. Thus, “closely fit in and extend through” mean more than merely “fit into” or “engage.” Wright’s argument would render the contested terms surplusage, leaving claim 6 to cover any “intramedullary rod portion adapted ... such that the central long axis of said femur passes through the central long axis of said intramedullary rod.” Wright does not seek to interpret the claim terms, as we did in
 
 Laitram
 
 and
 
 Bausch & Lomb,
 
 but seeks to eviscerate them. We therefore conclude that the district court did not err in construing the words “closely fit” to require a tight or snug fit between the rod and the isthmus of the femur or in construing the words “extend through” to require that the rod pass through the entire length of the isthmus. Because the parties agree that the intramedullary rods of the STAT-IM device do not fit tightly against or extend through the isthmus of the femur, the district court also did not err in granting summary judgment that there was no literal infringement.
 

 Wright also argues that, consistent with the recitation of the plateau planer of claim 9, the term “in proper alignment” in claim 6 refers to the alignment of the femoral surface modifying instruments with respect to
 
 only
 
 the varus/valgus angle. Osteonics responds that because the patent describes a guide handle with two flattened surfaces for locking surface modifying instruments in a fixed rotational orientation, the term “in proper alignment” refers to alignment with respect to the varus/valgus angle
 
 and
 
 the angle of rotation about the central long axis of the femur.
 

 While the court’s correct construction of the “closely fit in and extend through” language requires that we affirm its summary judgment of lack of literal infringement, we agree with Wright that the court erred in construing the term “in proper alignment.” The district court adopted Osteonics’ construction of this term based on the court’s observation that the “patent discloses a system that depends entirely on the handle alignment once the handle is in place.” This observation is only true if “alignment” is with respect to the varus/valgus angle, not the rotational angle.
 

 As noted above, the plateau planer, which is a surface modifying instrument, may be mounted on the guide handle and “freely rotated ... about the central long axis of the guide handle and thus rotated about the central long axis of the femur.” ’177 patent, col. 6, Ins. 22-25. While the other surface modifying instruments described in the specification are to be locked in a specific rotational orientation on the flattened surfaces of the guide handle, the plateau planer is clearly designed to rotate on the guide handle’s rounded surfaces. Thus, contrary to the district court’s interpretation, not all of the surface modifying instruments disclosed in the specification are fixed in a specific rotational alignment with respect to the central long axes of the guide handle and the femur. In order to include the operation of the plateau planer within the meaning of claim 6, the term “in proper alignment” therefore cannot be limited to the orientation of the femoral surface modifying instrument with respect to the rotational angle.
 

 
 *1445
 
 Furthermore, claim 9, which depends from claim 6, describes the plateau planer as having “a passage ... adapted to cooperatively engage said guide handle and to allow the planar abrading surface to be transversely rotated about the central long axis of said guide handle.”
 
 Id.
 
 at col. 14, Ins. 22-25. Thus, because the plateau planer can have any rotational alignment, it has no “proper” rotational alignment. Because we must not interpret an independent claim in a way that is inconsistent with a claim which depends from it,
 
 see Southwall Techs., Inc. v. Cardinal IG Co.,
 
 54 F.3d 1570, 1579, 34 USPQ2d 1673, 1679 (Fed.Cir.),
 
 cert. denied,
 
 — U.S. -, 116 S.Ct. 515, 133 L.Ed.2d 424 (1995), we must construe the term “in proper alignment” in claim 6 to refer only to the varus/valgus angle. Accordingly, the court erred in not adopting Wright’s interpretation of that term.
 

 Wright also argues that the district court erred in granting summary judgment that there was no infringement under the doctrine of equivalents. Specifically, Wright argues that the statement in this court’s opinion in the first appeal, that “[Wright] concedes that if Osteonies’ claim interpretation is correct, there is no infringement,” if read in context, did not concern infringement under the doctrine of equivalents. Wright also argues that the district court’s analysis is not sufficient to support disposing of the infringement claim on a motion for summary judgment. In response, Osteonies argues that Wright did concede that Osteonies’ claim construction would foreclose its claim. Osteonics also argues that, even without this concession, summary judgment was not erroneous because Wright failed to present any particularized evidence and linking argument that would tend to establish infringement under the doctrine of equivalents.
 

 We agree with Wright that the district court must give Wright an opportunity to prove whether Osteonies infringed under the doctrine of equivalents. First, as noted above, Osteonies’ (and the district court’s) claim construction was partially erroneous. Hence, Wright’s purported concession is no longer relevant. Second, contrary to Osteonics’ arguments, Wright did offer evidence and argument relevant to the doctrine of equivalents. Specifically, Wright introduced the testimony of Dr. Merritt, the designer of the STAT-IM device, who stated that the intramedullary rod of the STAT-IM device need not extend all the way through or fit tightly into the isthmus of the femur to achieve at least some of the functionality of the claimed intramedullary rod. The fact-finder might conclude that this evidence supports a finding of infringement under the doctrine of equivalents.
 

 Finally, as Wright argues, the district court’s analysis of equivalence is legally insufficient to support summary judgment for Osteonies. Aside from relying on Osteonies’ claim construction, part of which we do not accept, the court considered Wright’s assertion of infringement by equivalence to be an attempt to ignore claim limitations on which the public is entitled to rely.
 
 See Athletic Alternatives, Inc. v. Prince Mfg., Inc.,
 
 73 F.3d 1573, 1578, 37 USPQ2d 1365, 1373 (Fed. Cir.1996) (“[T]he doctrine of equivalents is not a license to ignore or ‘erase ... structural and functional limitations of the claim,’ limitations ‘on which the public is entitled to rely in avoiding infringement.’”) (quoting
 
 Perkin-Elmer Corp. v. Westinghouse Elec. Corp.,
 
 822 F.2d 1528, 1532, 3 USPQ2d 1321, 1324 (Fed.Cir.1987)). However, that is not necessarily the case. Wright’s assertion of infringement under the doctrine of equivalents is a permissible attempt to prohibit Osteonies from making and selling a device that combines “elements identical or equivalent to each claimed element of the patented invention.”
 
 Wamer-Jenkinson,
 
 — U.S. at -, 117 S.Ct. at 1054, 137 L.Ed.2d 146, 41 USPQ2d at 1875. Both the claimed invention and the STAT-IM device employ an intramedullary rod element, and Wright’s argument is that the STAT-IM rods are equivalent to the claimed rod. Thus, summary judgment was not appropriate because Wright’s theory of equivalence would not “entirely vitiate a particular claim element.”
 
 *1446
 

 Id.
 
 at-, n. 8, 117 S.Ct. at 1053 n. 8, 137 L.Ed.2d 146, 41 USPQ2d at 1875 n. 8. We therefore reverse the decision granting summary judgment that the STAT-IM device does not infringe the patent under the doctrine of equivalents and remand for further consideration of that issue.
 

 On remand, the fact-finder must determine whether the intramedullary rod of the claimed distal femoral surface shaping guide, the one element that is not literally met by the STAT-IM device, is equivalent to the intramedullary rods used in the STAT-IM device.
 
 [2]
 

 See id.
 
 at-, 117 S.Ct. at 1053, 137 L.Ed.2d 146, 41 USPQ2d at 1875. (“The Federal Circuit held that it was for the jury to decide whether the accused process was equivalent to the claimed process. There is ample support in our prior cases for that holding.”). This inquiry may be restated as whether the STAT-IM rods, which do not “closely fit in and extend through the narrowest portion of the human femur,”
 
 [3]
 
 substantially differ from the claimed rod, and whether the STAT-IM rods perform substantially the same
 
 function,
 
 in substantially the same
 
 way,
 
 to achieve substantially the same
 
 result
 
 as the claimed rod.
 
 See id.
 
 at -, 117 S.Ct. at 1054, 137 L.Ed.2d 146, 41 USPQ2d at 1875 (“There seems to be substantial agreement that, while the triple identity test may be suitable for analyzing mechanical devices, it often provides a poor framework for analyzing other products or processes.”).
 

 CONCLUSION
 

 The district court did not err in construing the claim terms “closely fit” or “extend through,” but did err in construing the term “in proper alignment.” The court also erred in granting summary judgment that there was no infringement under the doctrine of equivalents because it failed to provide a legally sufficient analysis to support such a judgment. Accordingly, the summary judgment of lack of literal infringement is affirmed, the summary judgment of lack of infringement under the doctrine of equivalents is reversed, and the case is remanded for proceedings not inconsistent with this opinion.
 

 COSTS
 

 No costs.
 

 AFFIRMED-IN-PART, REVERSED-IN-PART,
 
 and
 
 REMANDED
 

 [1]
 

 . The original suit was brought by Dow Corning Wright Corp. During the pendency of the first appeal, Wright Medical Technology, Inc. acquired the assets of Dow Corning Wright Corp., including the '177 patent.
 

 [2]
 

 . Because all of the claims of the '177 patent issued as originally filed and there is no evidence that Wright made representations or arguments before the U.S. Patent and Trademark Office that would estop it from extending its patent protection beyond the literal scope of its claims under the doctrine of equivalents, prosecution history estoppel does not apply in this case.
 

 [3]
 

 . Based on our claim construction and the parties' agreement that Osleonics' femoral surface modifying instruments are aligned with respect to the varus/valgus angle, we conclude that the "in proper alignment” limitation is literally found in the STAT-IM device and therefore that this limitation need not be considered under the doctrine of equivalents.