MASSACHUSETTS INSTITUTE OF
TECHNOLOGY, Plaintiff,

v.

LOCKHEED MARTIN GLOBAL TELE-
COMMUNICATIONS, INC., Comsat
Corporation, Lockheed Martin Global
Telecommunications, LLC, and Lock-
heed Martin Corporation, Defendants.

No. CIV.A. 01–11618–WGY.

United States District Court,
D. Massachusetts.

March 18, 2003.

See also 242 F.Supp.2d 58.

Susan G.L. Glovsky, John L. DuPre', Todd A Gerety, Hamilton Brook Smith & Reynolds, P.C., Concord, MA, for Massachusetts Institute of Technology.

Michael T. Murphy, Christian C. Michel, Roylance, Abrams, Berdo & Goodman, LLP, Washington, DC, Anthony J. Fitzpatrick, Duane Morris, LLP, Boston, MA, for Comsat Corporation, Lockheed Martin Global Telecommunications, Inc., Lockheed Martin Global Telecommuications, LLC, and Lockheed Martin Corporation.

## MEMORANDUM AND ORDER

YOUNG, Chief Judge.

## I. INTRODUCTION

### A. Procedural Posture

This patent dispute concerns systems for analyzing acoustic waveforms. The plaintiff, Massachusetts Institute of Technology ("MIT"), filed a complaint of infringement of United States Patent No. RE 36,478 (the " '478 Patent") against defendants Lockheed Martin Global Telecommunications, Inc., Comsat Corporation, Lockheed Martin Global, Telecommunications, LLC, and Lockheed Martin Corporation (collectively "Lockheed") on September 21, 2001 in this Court. On July 31, 2002, MIT moved for partial summary judgment in its favor as to Claim 1 of the '478 Patent, seeking the determination that Claim 1 covers Lockheed's device. In other words, MIT sought a finding that Lockheed's device literally infringes the '478 Patent. Pl.'s Mot. for Partial Summ. J. [Docket No. 27] at 14.[1]

On October 24, 2002, during a hearing pursuant to *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996), both parties confined their construction discussion of Claim 1 to the issue of whether MIT's device covers techniques that make voiced/unvoiced decisions. Both parties agreed that the voiced/unvoiced issue "ma[d]e a difference here" and that the other construction issues were "probably not necessary." *Markman* Hr'g Tr. at 41.[2]

---

1. MIT also moved for partial summary judgment in its favor as to the second and fourth affirmative defenses raised in Lockheed's answer concerning the requirements of 35 U.S.C. § 251 and the reissue recapture doctrine. Pl.'s Mot. for Partial Summ. J. [Docket No. 27] at 14; *see also* Defs.' Ans. [Docket No. 25] ¶¶ 31, 33. The Court ruled in MIT's favor on these two matters. *See* Partial Summ. J. Hr'g Tr. [Docket No. 60] at 10 (stating that the Court's current thinking was that Lockheed's second and fourth affirmative defenses ought be denied as matter of law and taking all but these two matters under advisement). Although it appears from Lockheed's cross motion for summary judgment that it did not interpret the Court's words during the Partial Summary Judgment Hearing on November 21, 2003 to be a ruling against Lockheed with regard to the affirmative defenses, it was indeed such a ruling and the Court here affirms it. *See* Defs.' Mot. for Summ. J. [Docket No. 63].

2. MIT also sought claim construction in its favor in regard to the use of harmonics (or variable frequency components). Because the voiced/unvoiced issue is dispositive, however, it is unnecessary to address this issue. *See Ballard Med. Prods. v. Allegiance Healthcare Corp.*, 268 F.3d 1352, 1358 (Fed.Cir. 2001) ("*[M]arkman* does not require a district court to follow any particular procedure in conducting claim construction.... If the district court considers one issue to be dispositive, the court may cut to the heart of the matter and need not exhaustively discuss all the other issues presented by the parties .... As long as the trial court construes the claims to the extent necessary to determine whether the accused device infringes, the court may approach the task in any way that it deems best.").

On November 21, 2002, while the Court's *Markman* construction as to the voiced/unvoiced issue was still pending, the Court held a hearing on MIT's motion for partial summary judgment. Because the parties were about to enter into mediation and the question of whether MIT's patent covered techniques that resort to a voiced/unvoiced decision was determinative, much of the hearing necessarily centered around an aspect of claim construction that had not yet been decided by the Court. The Court took the partial summary judgment motion under advisement but stated that it was "going to wait for mediation ... because [the parties] may reach a private ordering." Partial Summ. J Hr'g Tr. [Docket No. 60] at 9–10.

In mid-December 2002, after the mediation proceedings had proven unsuccessful, Lockheed filed a cross motion for summary judgment against MIT. On January 3, 2003, MIT submitted a reply to a prior claim construction submission by Lockheed and requested a prompt ruling from the Court on the issue of voiced/unvoiced decisions because MIT considered it determinative of the whole case. Pl.'s Reply to Defs.' Submission [Docket No. 67] at 2 ("[T]he parties will not be able to reach settlement until the voiced/unvoiced decisions issue is resolved. If the issue is resolved in [Lockheed's] favor, the patent will be deemed not to be infringed and the case will be over. If the issue is resolved in [MIT's] favor, one of [Lockheed's] principal defenses will be removed and [MIT] believes that the parties should be able to resolve the matter.").

On January 31, 2003, relying solely on intrinsic evidence,[3] this Court issued a Memorandum and Order interpreting Claim 1, lines 20–22, of the '478 Patent to mean that the invention does not resort to any voiced/unvoiced decision during the analysis and extraction phases. *Massachusetts Inst. of Tech. v. Lockheed Martin Global Telecomms., Inc.*, 242 F.Supp.2d 58, 66 (D.Mass.2003). The Court concluded that the appropriate interpretation of the language of Claim 1, lines 20–22, of the '478 Patent is:

> Analyzing each frame of samples and extracting therefrom a set of variable frequency components that have individual amplitudes, without regard to voiced/unvoiced decisions.

*Id.*

On February 4, 2003, MIT moved for reconsideration of this claim construction based on certain extrinsic evidence that it proffered.[4] On February 6, 2003, the Court held a hearing on this motion for reconsideration and the cross-motions for summary judgment. Up until that point, MIT had not made any claims of infringement under the doctrine of equivalents.

---

**3.** MIT strenuously argues that the Court ought to consider extrinsic evidence in its claim interpretation. *See* Pl.'s Surreply in Opposition to Defs.' Mot. for Summ. J. [Docket No. 75]; Pl.'s Mot. for Reconsideration [Docket No. 79]; Pl.'s Supplement to Request for Reconsideration [Docket No. 83]. As the Court explained in *Massachusetts Inst. of Tech.*, 242 F.Supp.2d at 65, however, it is not necessary to look beyond the specification and prosecution history to construe the claim. *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed.Cir.1996) (noting that resort to extrinsic evidence ought be made only "if necessary").

**4.** MIT also supplied a supplement to this request on February 4, 2003 [Docket No. 83], that was filed with this Court on February 21, 2003. Like MIT's Surreply in Opposition to Lockheed's Motion for Summary judgment, the motion for reconsideration and the supplement request this Court to rely on extrinsic evidence to construe the claim. As noted *supra* in footnote 3 and in *Massachusetts Inst. of Tech.*, 242 F.Supp.2d at 65, resort to extrinsic evidence is not necessary for proper construction of the claim.

The Court gave MIT twenty days to submit further support for this type of claim. All matters were taken under advisement.

On February 14, 2003, the Court denied MIT's motion for reconsideration of the January 31, 2003 claim construction. On February 21, 2003, MIT submitted a reply concerning whether it would submit a claim under the doctrine of equivalents, [Docket No. 82]. In this reply, MIT stated that it had "determined that it [would] not assert a claim of infringement under the doctrine of equivalents in this case" and "thus, the question of literal infringement is the sole question before the Court." Pl.'s Reply Regarding the Doctrine of Equivalents [Docket No. 82] at 1–2.

**B. Facts**

MIT's patent discloses and claims novel methods, devices, and systems for processing acoustical waveforms such as those commonly used in connection with the encoding, transmission, and decoding of speech over wireless networks. Am. Compl. ¶ 19. A particular application of the '478 Patent involves analyzing digitally sampled speech and then synthesizing it to create a representation of speech. *See* Pl.'s Revised Statement of Material Facts [Docket No. 36] ¶ 6; *see also* Defs.' Supplemental Revised Concise Statement of Material Facts [Docket No. 57] ¶ 6.

MIT claims that Lockheed makes, uses, sells, or offers for sale satellite services and terminals that infringe the '478 Patent.[5] Am. Compl. ¶¶ 20–23. MIT asserts (and Lockheed does not dispute) that Lockheed's products and services are compatible with a standard called INMARSAT–M that defines, among other things, a method of analyzing and synthesizing speech. Pl.'s Revised Statement of Facts ¶ 19. MIT apparently asserts that products that match the INMARSAT–M standard infringe the claim. Pl.'s Mot. for Partial Summ. J. at 13–14.

Lockheed does not dispute that its products and services are INMARSAT–M compatible, but claims that there are some differences between its products and services and the INMARSAT–M standard upon which MIT relies in its analysis. Defs.' Supplemental Revised Concise Statement of Material Facts at ¶¶ 19–22. Specifically, Lockheed claims its products "do not ... follow the recommendations contained in the standards" regarding the "implementation details." *Id.* at ¶ 19a. Lockheed argues that the products in question differ substantially from the respective 1991 and 1995 INMARSAT–M standard and that accordingly, infringement cannot be based simply on the fact that its products are INMARSAT–M compatible. *Id.*

The parties agree that all the products delivered to Lockheed by DVSI "have certain operating mechanisms in common." Pl.'s Response to Concise Statement of the Material Facts [Docket No. 68] at ¶ 1; Defs.' Statement of Material Facts [Docket No. 65] at 1.

First, they each define frames and divide the frame into multiple frequency bands. A voicing decision is made for each band within a frame, such that each band is identified as voiced or unvoiced. Second, frequency components are determined as harmonics of a pitch estimate. Thus, the locations of the frequency components are *dependent* on the pitch. Third, the functionality which could be considered 'matching' involves either frequency ordered assignment matching, or a conventional[6] overlap

---

**5.** The products that are in question have been provided to Lockheed via a company called DVSI.

**6.** The one point of disagreement as to this point is that MIT does not agree that the adjective "conventional" should be included.

and add technique.

*Id.* Furthermore, it is undisputed that Lockheed's products do not make single voiced/unvoiced decisions as to an entire frame. Instead, they define multiple frequency bands within each frame and make voicing decisions as to each frequency band—that is, the frequency bands within the frame are classified as *either* voiced or unvoiced, and a single frame may contain both voiced and unvoiced frequency bands. These voiced/unvoiced decisions are then used to determine how each frame transitions to the next. Pl.'s Response to Concise Statement of the Material Facts ¶¶ 2–3; Defs.' Statement of Material Facts at 2.[7]

The central issue in this case has been whether or not MIT's patent covers devices that resort to a voiced/unvoiced decision. The Court has construed Claim 1, lines 20–22, of MIT's patent such that it does not cover techniques that resort to any voiced/unvoiced decisions in the extraction and analysis phases. *Massachusetts Inst. of Tech.*, 242 F.Supp.2d at 66. As noted above, it is undisputed that Lockheed's products do indeed resort to a voiced/unvoiced decision in the extraction and analysis phases, in that they make multiple voicing decisions across a frame of data. The question before the Court is thus whether summary judgment can be granted in either party's favor for infringement or noninfringement.

## II. DISCUSSION

The principal dispute in the parties' cross motions for summary judgment concerns the alleged infringement of Claim 1 of the '478 Patent. MIT argues that Lockheed's invention infringes Claim 1. Lockheed argues that it does not.

**7.** *See also* Pl.'s Counsel's Statements in the November 21, 2002 Tr. [Docket No. 60] at 4, 5. ("There is no dispute between the parties that [Lockheed's] products do use voicing de-

### A. Standard of Review

Summary judgment is warranted if, after reviewing the facts in the light most favorable to the nonmoving party, no genuine issues of material fact remain. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Fed.R.Civ.P. 56(c). A "genuine" issue of fact is one that a reasonable jury, on the record before the court, could resolve in favor of either party. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. In making its determination, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *Id.; see also MediaCom v. Rates Tech., Inc.*, 4 F.Supp.2d 17, 33 (D.Mass.1998). Cross motions for summary judgment, as presented in this case, do not alter the basic summary judgment standard, but rather require determination whether either of the parties deserves judgment as matter of law on facts that are not disputed. *Adria Int'l Group, Inc. v. Ferre Dev., Inc.*, 241 F.3d 103, 107 (1st Cir.2001).

■■■ To support a finding of patent infringement, the accused device or method must embody each and every element of a claim, either literally or under the doctrine of equivalents. *Warner–Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997); *London v. Carson Pirie Scott & Co.*, 946 F.2d 1534, 1538–39 (Fed.Cir.1991); *MediaCom v. Rates Tech., Inc.*, 4 F.Supp.2d 17, 34 (D.Mass.1998). Even if an element of the accused device or method does not literally infringe the patent claim, it may nevertheless infringe under the doctrine of equivalents if it performs the same function, in the same way, to

cisions and it's [sic] also, I believe, no dispute that those voicing decisions are not a single decision across an entire frame.").

produce the same result as the claimed element. *Pennwalt Corp. v. Durand–Wayland, Inc.*, 833 F.2d 931, 934–35 (Fed. Cir.1987); *MediaCom*, 4 F.Supp.2d at 34.

**B.  Literal Infringement**

■  To determine whether an accused device literally infringes a patent claim, courts apply a two-step analysis. *See, e.g., Watts v. XL Sys., Inc.*, 232 F.3d 877, 880 (Fed.Cir.2000); *Laitram Corp. v. Morehouse Indus., Inc.*, 143 F.3d 1456, 1461 (Fed.Cir.1998). First, the court construes the claims to determine their scope as matter of law. *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). Then the court determines whether the claims cover the accused device. *See, e.g., Watts*, 232 F.3d at 880; *Cybor Corp. v. FAS Technologies., Inc.*, 138 F.3d 1448, 1454 (Fed.Cir. 1998) (en banc).

■  The Court has applied the first prong of the analysis and construed Claim 1, lines 20–22, of the '478 Patent not to cover techniques that resort to voiced/unvoiced decisions. *Massachusetts Inst. of Tech.*, 242 F.Supp.2d at 66. Lockheed's device (as noted above) undisputedly resorts to voiced/unvoiced decisions. Therefore, even if the Court views all evidence in the light most favorable to MIT and assumes that Lockheed's products are an exact match to INMARSAT–M, there is still no literal infringement. *See Wright Medical Technology, Inc. v. Osteonics Corp.*, 122 F.3d 1440, 1445 (Fed.Cir.1997). This is because, to spell out infringement, an accused device must embody each and every element of a claim. *Southwall Tech. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed.Cir.1995); *Builders Concrete, Inc. v.*

*Bremerton Concrete Prods. Co.*, 757 F.2d 255, 257 (Fed.Cir.1985). Here, by resorting to multiple voicing decisions, Lockheed's products do not encompass every element of Claim 1 of the '478 Patent. Accordingly, the Court finds that Lockheed's products do not literally infringe on Claim 1 of the '478 Patent.[8]

**C.  Equivalent Infringement**

MIT has not asserted that the doctrine of equivalents applies here. In fact, MIT stated in a memorandum to the Court that if the Court resolves the *Markman* construction in Lockheed's "favor, the patent will be deemed not to be infringed and the case will be over." Pl.'s Reply to Defs.' Submission [Docket No. 67] at 2.

■  A claim under the doctrine of equivalents is not waived, however, when a party merely abstains from arguing equivalent infringement. The Federal Circuit has stated that if a party offers "evidence and argument relevant to the doctrine of equivalents"—even if the party does not "particularize" the evidence as such—"the district court must give [the patentee] an opportunity to prove whether [the other party] infringed under the doctrine of equivalents." *Wright*, 122 F.3d at 1445 (remanding so the fact-finder could determine whether there was infringement under the doctrine of equivalents, because the patentee had not specifically argued infringement under the doctrine but had introduced relevant evidence and arguments). Here, unlike in *Wright*, the Court has given MIT the opportunity to prove whether Lockheed infringed under the doctrine of equivalents, and MIT has decidedly declined to do so. During the sum-

---

8. Because the Court finds there is no literal infringement—even when viewing the evidence in the light most favorable to MIT—the Court must deny MIT's motion for summary judgment against Lockheed on the issue of

infringement. The rest of this Memorandum and Order, therefore, addresses Lockheed's motion for summary judgment of noninfringement.

mary judgment hearing on February 6, 2003, this Court initiated a discussion about the potential applicability of the doctrine of equivalents and gave MIT a further 20 days in which to file any support for equivalent infringement. In response, on February 21, 2003, MIT sent a reply to the Court stating that "it [would] not assert a claim of infringement under the doctrine of equivalents in this case . . . and thus, the question of literal infringement is the sole question before the Court." Pl.'s Reply Regarding the Doctrine of Equivalents at 1–2. Thus, unlike in *Wright,* here the patentee's concession regarding the doctrine of equivalents is not merely "purported" by the other side, but unequivocally stated to the Court by the patentee itself.[9] Because MIT has expressly waived a claim for equivalent infringement, deciding summary judgment on the basis of this Court's claim construction is justifiable.

◼ Moreover, even had MIT asserted an equivalents argument, it would fail. To prevail under the doctrine of equivalents, the patent-holder must show that the accused device lacks an element contained in the invention, but substitutes some other element that performs substantially the same function in substantially the same way to achieve substantially the same result. *Graver Tank & Mfg. Co., Inc. v. Linde Air Prods. Co.,* 339 U.S. 605, 608, 70 S.Ct. 854, 94 L.Ed. 1097 (1950). Specifically, "[e]ach element contained in a patent claim is deemed material to defining the scope of the patented invention, and thus the doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole." *Warner–Jen-*

*kinson Co., Inc. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 29, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997); *accord Vehicular Tech. Corp. v. Titan Wheel Int'l, Inc.,* 141 F.3d 1084, 1089–90 (Fed.Cir.1998).

◼ While the burden to show that the patent does not surrender the equivalent in question would of course be placed on MIT at trial, the Court draws all inferences against Lockheed for the purposes of deciding Lockheed's motion for summary judgment. It appears undisputed that MIT's and Lockheed's products do the same work and accomplish substantially the same result. Thus, MIT could prevail with an equivalence argument if—and only if—it also showed that the products do this in substantially the same way. *Dominion Magnesium Ltd. v. United States,* 162 Ct.Cl. 240, 320 F.2d 388, 396 (Ct.Cl. 1963) ("[M]ere identity of function and result is not sufficient to establish infringement. The test of infringement is tripartite: do the accused operations do the same work, in substantially the same way, and accomplish substantially the same result."). Therefore, MIT would have to show that resorting to multiple voicing decisions per frame during analysis and extraction (as Lockheed's products undisputedly do) is *not* substantially different from MIT's invention. MIT could argue this point successfully only by showing that its patent covers systems that make voicing decisions during these phases. MIT, however, cannot do so for two reasons.

First, the Court rules that MIT is estopped from making this argument due to the prosecution history of this patent. *See*

---

9. In both *Wright* and this case, the patentee stated that "if [the alleged infringer's] claim interpretation is correct, there is no infringement." *Wright,* 122 F.3d at 1445; Pl.'s Reply to Defs.' Submission [Docket No. 67] at 2 ("If the issue is resolved in [Lockheed's] favor, the patent will be deemed not to be infringed and the case will be over."). Here, however, it is

clear from patentee's other submissions to the Court that patentee is conceding on both literal and equivalent infringement if the Court upholds the claim construction issued on January 31, 2003. In the *Wright* case, by contrast, the patentee argued that it had only conceded literal infringement. *Wright,* 122 F.3d at 1445.

*Catalina Mktg. Int'l, Inc., v. Coolsavings.com, Inc.,* 289 F.3d 801, 813 (Fed.Cir. 2002) (noting that "applicability of prosecution history estoppel is a legal question" for the Court); *see also General Electric Co. v. Nintendo Co., Ltd.,* 179 F.3d 1350, 1362 (Fed.Cir.1999) ("Prosecution history estoppel applies as a limitation to the doctrine of equivalents after the claims have been properly interpreted and no literal infringement is found.") (internal citations and quotation marks omitted).

This Court decided, in its construction of Claim 1, lines 20–22, of the '478 Patent, that MIT did indeed narrow its claim to techniques that do not resort to any voiced/unvoiced decisions during the extraction and analysis phases.[10] *See Massachusetts Inst. of Tech.,* 242 F.Supp.2d at 66. In making this decision, the Court relied, in part, on an amendment before the Patent and Trademark Office in which the inventors distinguished their invention based on the structural difference between a speech analysis system that does not resort to voicing decisions and one that does. In the "Remarks" of the May 20, 1988 Amendment, the inventors clearly articulated that their invention worked "independent of the speech state, thus avoiding the need for voicing decisions," *see* File Wrapper, Ex. 2, Tab D, at 10, and they repeatedly distinguished their invention from prior art based on this broad characterization. For example, the applicants stated that the *"most important"* distinction between their invention and Fulgham's was that "Fulgham neither teaches nor suggests applicant's system for analy-

sis of acoustic waveforms in which the waveform is sampled to extract a series of variable frequency components directly from each frame (*independent of voicing state,* pitch or channel constraints)." File Wrapper, Ex. 2, Tab D at 14 (emphasis added). Subsequently, the applicants distinguished their invention from Hedelin because "[l]ike the Fulgham system, Hedelin relies on an initial voiced/unvoiced analysis.... There is no teaching in the Hedelin reference of any system for analyzing a waveform ... without regard to voicing decisions or the base band." *Id.* at 15–16.[11] By distinguishing its patent application in this way, the reasonable inference is that MIT "concede[d] that the patent does not extend as far as the original claim"—that is, that the patent does not cover any techniques that resort to voicing decisions in the extraction and analysis phases. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,* 535 U.S. 722, 122 S.Ct. 1831, 1840, 152 L.Ed.2d 944 (2002).

Any argument that MIT's limitation of its technique to one that works independent of voicing decisions was not *necessary* for patent approval, and that prosecution history therefore does not apply, is unavailing. *See Catalina Mktg.,* 289 F.3d at 813 (stating that prosecution history estoppel "prevents the doctrine of equivalents from recapturing subject matter surrendered during prosecution."); *see also Festo,* 122 S.Ct. at 1839–40 (stating that "[e]stoppel arises when an amendment is made to secure the patent and the amendment narrows the patent's scope," and that "even if the amendment's purpose were

---

**10.** The Court did not decide that voicing decisions were never made in the patented invention. Instead, the Court has interpreted lines 20–22 of Claim 1 of the '478 Patent to mean that the invention does not resort to voicing decisions during analysis and extraction.

**11.** Admittedly, MIT did make a few cursory references to the prior art's determination of

whether an *entire frame* of speech is voiced or unvoiced in the file wrapper. *See, e.g., id.* at 14, 15. These two cursory references, however, are insufficient to convince the Court that the inventors were only disclaiming voiced/unvoiced decisions as to an entire frame.

unrelated to patentability, the court might consider whether it was the kind of reason that nonetheless might require resort to the estoppel doctrine.").

■ The patent approval process is a public one, and "[t]he public has a right to rely on such definitive statements made during prosecution." *Digital Biometrics, Inc. v. Identix, Inc.,* 149 F.3d 1335, 1347 (Fed.Cir.1998). To rule that MIT's patent covers techniques that make multiple (as opposed to single) voicing decisions per frame in the extraction and analysis phases would defeat the purpose of applying estoppel—namely, "to hold the inventor to the representation made during the application process and to the inferences that may reasonably be drawn from the amendment." *Festo,* 122 S.Ct. at 1840. Because a patentee cannot "construe the claims narrowly before the Patent Office and later broadly before the courts," the Court finds that MIT has surrendered coverage of techniques, like Lockheed's, that make voicing decisions during extraction and analysis. *Autogiro Co. of America v. United States,* 181 Ct.Cl. 55, 384 F.2d 391, 399 (Ct.Cl.1967).

Second, even if prosecution history estoppel did not apply in this case, the difference between the two products, that is, one makes voiced/unvoiced decisions and the other does not, is not "unimportant," "insubstantial," or "trivial." *See Graver Tank,* 339 U.S. at 607, 70 S.Ct. 854; *see also Festo,* 122 S.Ct. at 1838 (noting that the doctrine of equivalents "allows the patentee to claim those insubstantial alterations that were not captured in drafting the original patent claim but which could be created through trivial changes"). The key differentiating aspect of MIT's device over prior art is that MIT's device works independent of voicing decisions and that this aspect of the invention helped MIT produce a higher quality product. The patent and the prosecution history evi-dence this fact. *See Massachusetts Inst. of Tech.,* 242 F.Supp.2d at 60–65. The accused device, on the other hand, does that which MIT sought in its invention to avoid: it makes voicing decisions.

The fact that Lockheed's device also makes a higher quality product without resorting to a voicing decision *as to an entire frame* does not make it equivalent to MIT's product. The purpose of the equivalents doctrine is to prevent copyists from making "unimportant and insubstantial changes and substitutions in the patent which, though adding nothing, would be enough to take the copied matter outside the claim, and hence outside the reach of the law." *See Graver Tank,* 339 U.S. at 607, 70 S.Ct. 854. This is not a copycat case and MIT has presented nothing to indicate otherwise—that is, it has presented nothing to indicate that the changes that were made in Lockheed's products were unimportant or insubstantial. On the contrary, MIT's own action of amending the patent to emphasize that its invention worked without making voiced/unvoiced decisions indicates that the alterations made by Lockheed—namely, the resort to multiple voicing decisions in the analysis and extraction phases—were indeed important and material. *See Festo Corp.,* 122 S.Ct. at 1838 ("[T]he difference which the patentee thus disclaimed *must* be regarded as material.") (internal citations and quotation marks omitted) (emphasis added).

In short, Lockheed's products perform in a "substantially different way" than that described by the '478 patent and, therefore, do not infringe under the doctrine of equivalents. *See Graver Tank,* 339 U.S. at 608–09, 70 S.Ct. 854 ("Where a device is so far changed in principle from a patented article that it performs the same or a similar function in a substantially different way, but nevertheless falls within the literal words of the claim, the doctrine of

equivalents may be used to restrict the claim and defeat the patentee's action for infringement."). As such, had MIT argued infringement under the doctrine of equivalents, it would have failed.

## III. CONCLUSION

MIT has failed to set forth specific facts showing that a genuine issue exists for trial. A reasonable jury, on the record before the Court, could only decide in favor of Lockheed. Accordingly, MIT's motion for partial summary judgment of infringement [Docket No. 27] is DENIED and Lockheed's motion for summary judgment of noninfringement [Docket No. 63] is ALLOWED. Judgment of noninfringement in favor of Lockheed will enter.

SO ORDERED.